**Rex and Marilyn BRADEN, Plaintiffs,**

v.

**HONEYWELL, INC., Defendant.**

No. C2–97–401.

United States District Court,
S.D. Ohio,
Eastern Division.

May 12, 1998.

Richard Innis, Steven Zeehandelar, Alessandro Sabatino, Jr., Columbus, OH, for Plaintiffs.

James Walker Wiggin, III, Columbus, OH, for Defendant.

## OPINION AND ORDER

SARGUS, District Judge.

Plaintiffs Rex and Marilyn Braden, together with Grange Mutual Casualty Company ("Grange") bring this diversity action asserting claims of breach of contract and negligence against defendant Honeywell, Inc. ("Honeywell"). This matter is before the Court for consideration of Honeywell's Motion for Summary Judgment.

### I.

On September 9, 1993, plaintiff Rex Braden entered into a written contract with Honeywell for the installation of a fire and burglar alarm system at the Bradens' residence located at 427 N. Boundary Road, McArthur, Ohio. Under the terms of the

contract, Honeywell was to provide monitoring and emergency reporting service on a monthly basis. The purchase price totaled $2,100.00, of which $885.00 was attributable to the fire alarm system. Additionally, the Bradens' were obligated to pay Honeywell the sum of $24.00 per month for an ongoing monitoring system.

On February 6, 1995, a fire occurred at the Bradens' residence resulting in damage to both real and personal property. Plaintiff Grange had issued to the Bradens' a homeowner's policy of insurance covering the real and personal property located at the Bradens' residence. Under the terms of the insurance policy, Grange alleges that it paid to the Bradens' the sum of $382,777.12 for damages resulting from the fire. The plaintiffs allege in Count One of the Complaint that the installation performed by Honeywell "was negligent to the extent that one or more of the smoke detectors were installed in an improper location." (Complaint, ¶ 4)

In Count Two of the Complaint, the plaintiffs further allege that Honeywell failed to follow appropriate procedures upon receipt of a fire call generated at the Braden's home. The plaintiffs aver that the failure to follow such procedures constituted negligence on the part of the defendants.

In its Motion for Summary Judgment, Honeywell first alleges that the claims set forth in the Complaint are barred by written agreement of the parties. Alternatively, Honeywell contends that, under the agreement, if there is any liability, recoverable damages should not exceed the greater of $250.00 or six times the monthly charge, which in this case is $144.00. Finally, Honeywell contends that the plaintiffs do not have a separate cause of action in negligence independent and severable from the contract.

## II.

The procedure for granting summary judgment is set forth in Fed. R. Civ. Pro. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.* 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at

586, 106 S.Ct. 1348). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which is seeks to rely to create a genuine issue of material fact.

### III.

■ Two of Honeywell's three grounds in support of its Motion for Summary Judgment are based upon two provisions of the contract entered into by Rex Braden and Honeywell. The first unnumbered paragraph states:

> Customer agrees that Customer retains the sole responsibility for the life and health of persons in the premises, for protecting against property or personal injury losses in the premises for both Customer and others. Customer agrees that Honeywell is not responsible for personal injury or other losses which are alleged to be caused by the improper operation, or non-operation of the system, including cases where the system never functions, whether due to defects in the system or Honeywell's acts or omissions in receiving and responding to alarm signals. Customer further agrees that Honeywell is not an insurer and that insurance, if any, covering personal injury and other losses shall be obtained by the Customer. If there is any liability on Honeywell's part, it will be limited to six (6) times the monthly charge provided above or $250 whichever is greater.

*Contract, Attached as Ex. 1,* Defendant's Motion for Summary Judgment.

The contract also included the following boldfaced language:

> **THIS TRANSACTION IS NOT SUBJECT TO THE UNIFORM COMMERCIAL CODE. IN ANY EVENT, THE FOLLOWING DISCLAIMERS APPLY: EXCEPT FOR THE LIMITED EQUIPMENT WARRANTY DESCRIBED ABOVE, HONEYWELL MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, THAT THE SYSTEM OR SERVICE SUPPLIED MAY NOT BE COMPROMISED, OR THAT THE SYSTEM OR SERVICE WILL IN EVERY CASE PROVIDE THE PROTECTION FOR WHICH IT IS INTENDED. IN NO EVENT WILL HONEYWELL BE RESPONSIBLE FOR ANY INDIRECT, CONSEQUENTIAL OR INCIDENTAL DAMAGES.**

*Id.*

Honeywell contends that the Bradens' waived all rights to claim damages under the contract or, alternatively, are limited to a recovery of $144.00. As defendant correctly notes, the two clauses, read together, may be interpreted under two different analyses. The first involves consideration of whether the clauses are permissible exculpatory clauses enforceable under Ohio law. The second involves consideration of whether the provisions are appropriate limitations of damages or, conversely, unenforceable penalties. Each of these theories will be separately considered.

The question of whether the clauses cited above, either limiting liability or waiving damages, has been the subject of much litigation. Since this case is before the Court based upon diversity jurisdiction, the substantive law of the State of Ohio is binding upon this Court.

The Ohio Supreme Court has addressed the precise issue raised by the defendants. In *Samson Sales, Inc. v. Honeywell, Inc.,* 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), the Court considered a similar contractual provision involving the same defendant in this case. The parties in *Samson Sales, Inc.* entered into a contract which included the following language:

> It is agreed by and between the Parties that Company is not an insurer; and that this agreement in no way binds Company as an insurer of the premises or of the property of the Subscribers, and that all charges are based solely on the value of the service, maintenance, and installation of the system. In the event of loss or

damage to Subscriber resulting by reason of failure of the performance of such service or of the failure of the system to properly operate, Company's liability, if any, shall be limited to the sum of fifty dollars ($50.00) as liquidated damages and not as a penalty and this liability shall be exclusive.

*Id.* at 28, 465 N.E.2d 392.

In *Samson Sales, Inc.,* the plaintiff owned a pawn shop and had paid the sum of $1,500.00 for installation of a burglar alarm system. Thereafter, the plaintiff paid $150.00 per month. A burglary occurred at the business establishment. Honeywell refused to pay any more than $50.00 towards the loss, based on the language cited above.

The Ohio Supreme Court noted that clauses and contracts providing for reasonable liquidated damages have been recognized and approved in Ohio. Conversely, "where the amount...specified is manifestly inequitable and unrealistic, Court will ordinarily regard it as a penalty." *Id.* at 28, 465 N.E.2d 392. The Court noted that an amount so fixed could be treated as liquidated damages and not as a penalty, if, at the time the contract was entered, damages were uncertain and difficult to calculate, the contract as a whole is not manifestly unconscionable and the contract is consistent with the intention of the parties.

A unanimous Ohio Supreme Court found that the damages in the case were patently estimable and that the sum of $50.00 manifestly disproportionate to possible damages. The Court also concluded that "...it is beyond comprehension that the parties intended that damages in the amount of $50.00 should follow the negligent breach of the contract." *Id.* at 29, 465 N.E.2d 392.

Since its decision in *Samson Sales, Inc. v. Honeywell, Inc., supra,* the Ohio Supreme Court has not revisited the issues raised by the defendant in the case at bar. Further, in the case of *In re Graham Square, Inc. v. Mutual Life Insurance Company of New York,* 126 F.3d 823 (6th Cir.1997), the Court of Appeals for the Sixth Circuit recently cited the *Samson* case as controlling Ohio law with respect to determining whether a liquidated damages clause is enforceable.

More recently, in *Hunter v. BPS Guard Services, Inc.,* 100 Ohio App.3d 532, 654 N.E.2d 405 (Franklin County, 1995), the Franklin County Court of Appeals considered a case involving a store employee who was injured in a robbery. The employee brought an action against several defendants, including the installer of a security alarm system. The contract entered into by the store, and the security company provided:

Since it is impractical and extremely difficult to fix actual damages which may arise due to the failure of services provided, if, notwithstanding the above provisions, there should arise any liability on the part of the company, such liabilities shall be limited to an amount equal to one-half of the annual service charge provided in any agreement between the installer and the subscriber or $250.00, whichever is greater. This sum shall be complete and exclusive and shall be paid and received as liquidated damages and not as a penalty.

*Id.* at 550, 654 N.E.2d 405.

The Franklin County Court of Appeals reviewed the decision in *Samson Sales, Inc., supra,* and held:

Applying the principle set forth in *Samson* and *Jones* to this case, this Court finds that the $250.00 limitation in the Alarm Monitoring Service Agreement constitutes a penalty and does not constitute liquidated damages. Atkinson and Guardian never established a type of relationship which manifests an intention by the parties to consider, adjust or estimate the damages that might reasonably occur from the negligent breach of the Alarm Monitoring Service Agreement. Further, any damages that might result from a breach of the contract are not so uncertain or difficult to prove as to create an ambiguity as to their amount.

*Id.* at 552, 654 N.E.2d 405.

In *Zurich–American Insurance Company v. Citadel Alarm, Inc.,* 1986 WL 5291 (Cuyahoga Cty. Ct. Appeals, 1986) the Court refused to enforce a similar provision limiting the alarm service company's liability to $90, equaling 50% of the annual service charge. The defendant had charged $1,500 to install

the system. The Court reviewed the contract under the *Samson Sales, Inc.* analysis and found the exculpatory provisions to be void.

If the state of the Ohio case law were limited to the foregoing decisions, this Court's analysis would be concluded. The defendant, however, correctly points out that a number of cases decided by the various Ohio Courts of Appeals have upheld the validity of contractual provisions waiving rights to damages or limiting the amount of damages in circumstances involving alarm systems contracts. For example, in *Nationwide Mutual Fire Insurance Company v. Sonitrol, Inc.*, 109 Ohio App.3d 474, 672 N.E.2d 687 (Cuyahoga County, 1996), the Court distinguished *Samson Sales, Inc.* The Court noted that the security company and the North Olmsted City School District had entered into a contract for burglary protection involving a limited number of offices and corridors of a high school building. The Court emphasized that the amount of money which could be taken by a thief was difficult to ascertain and that the presence of extremely valuable items was not great. Based on these conclusions, the Court held, under the same analysis set forth in *Samson Sales, Inc.*, the contractual provisions should be enforced.

Other cases are in accord. *See e.g., Royal Indemnity Company v. Baker Protective Services, Inc.*, 33 Ohio App.3d 184, 515 N.E.2d 5 (Montgomery County, 1986); *Motorist Mutual Insurance Company v. ADT Security Systems*, 1995 Ohio App. LEXIS 3235 Montgomery County 1995; *Weinle v. Sonitrol*, No. C–870279, 1988 WL 17129 (Hamilton County App., Feb. 17, 1988); *Jewelers Mutual Insurance Company v. American Alarm, Inc.*, 1990 WL 41329, 1990 Ohio App. LEXIS 1410 (1990 Hamilton County Court of Appeals).

In summary, the Ohio Supreme Court in *Samson Sales, Inc.* issued a unanimous decision which in essence refused to enforce a clause in a contract involving a security system installed and maintained by Honeywell which limited the customers damages to $50.00. While at least two Ohio Court of Appeals decision of recent vintage have followed the holding in *Samson Sales, Inc.*, several other decisions from the various Courts of Appeals have either ignored or distinguished the holding of the Ohio Supreme Court.

Further complicating the analysis is the case of *Nahra v. Honeywell, Inc.*, 892 F.Supp. 962 (N.D.Ohio 1995). The *Nahra* decision limited the holding in *Samson Sales, Inc.* to the question of whether the $50.00 cap on damages represented liquidated damages or an unlawful penalty. The *Nahra* decision then considered whether the same analysis used in *Samson Sales, Inc.* should apply to clauses wherein one party disclaims any liability under a contract. Based on this distinction, the Court found that while *Samson Sales, Inc.* prohibited a $50.00 cap on damages, the Ohio law would not necessarily prohibit a complete limitation of liability agreed to by the parties. On this basis, the Court held that the portion of the agreement which barred a recovery of damages of any amount was enforceable.

In *Nahra*, Judge Bell was confronted with the same dilemma which has occurred in this case. He noted that the decisions of the Courts of Appeals in Ohio "do not easily reconcile" with respect to *Samson Sales, Inc. Nahra*, 892 F.Supp. at 968. While this Court gives great deference to the decision rendered in *Nahra v. Honeywell, Inc., supra*, the Court is also constrained to follow controlling legal authority from the Ohio Supreme Court with respect to Ohio law. The facts in *Samson Sales, Inc.* are virtually identical to those set forth in this case. The only substantial difference is the fact that the Bradens are individual consumers, as opposed to a commercial entity in *Samson Sales, Inc.*

In *Samson Sales, Inc.*, the Ohio Supreme Court found that a cap on damages of $50.00 was unenforceable as a penalty and that such sum had no relationship to the amount of anticipated damages or to the underlying agreement of the parties. In this Court's view, it is inconceivable that the Ohio Supreme Court would have refused enforcement of a clause limiting damages to $50.00 while at the same time would have enforced a

clause preventing *any* liability under the same contract.

For the same reasons expressed in *Samson Sales, Inc.*, this Court finds that the two clauses of the contract involved in this case waiving rights to damages or limiting liability are unenforceable. There is no basis upon which this Court may conclude that damages resulting from a failure of the alarm system were difficult to prove. Further, it is wholly inconsistent with the nature of a contract to prevent fire to residential premises that the plaintiffs would have paid for such a service with the expectation that they would have no right of recovery in the event that the service was improperly installed or operated. Further, to enforce the provisions limiting damages or liability would render the contract manifestly unconscionable and unreasonable.

The defendant makes a strong argument that the limitation on damages or liability is necessary to prevent Honeywell from becoming the insurer of the plaintiffs' residence. Were this the case, the costs of such service would skyrocket. At the same time, codefendant Grange sold to the Bradens an insurance policy which was discounted with respect to annual premiums, given the fact that the Bradens had invested in a fire alarm detection system. While Grange undertook the responsibility of primarily insuring the home, it has long been the case that such insurers maintain rights of subrogation against third parties causing injuries to the residence for which the homeowner insurance company is required to pay.

Honeywell further argues that the clauses should be enforced to prevent a windfall to Grange. According to Honeywell, Grange received premiums in exchange for the risk of insuring the Braden's home. By contrast, Honeywell claims that it did not charge for insurance because it relied upon the homeowner's insurance policy issued by Grange. In the Court's view, this is an argument involving policy, rather than law. The Court notes, however, that nothing in the record reveals that Grange in any way agreed to insure the Braden's home against Honeywell's alleged failure to perform the contract.

Standard homeowner insurance policies give to the insurance company subrogation rights against any third party whose acts or omissions cause injury to the residence and cause the homeowner's insurance company to make payments to the insured.

This Court would be remiss if it did not make note of the fact that the defendants Memorandum in Support of its Motion for Summary Judgment is an example of the highest level of advocacy and professionalism. As noted, the case law in this area is less than consistent. The defendants Memorandum correctly points the Court to all the relevant decisions involving the issues raised herein, including those decisions which were not necessarily favorable to the defendant's position.[1]

## IV.

█ The defendant has also argued that the plaintiffs have no cause of action in negligence independent of the contract between the Bradens and Honeywell. As noted above, the two counts of the Complaint assert causes of action sounding in tort. Both counts allege negligence on the part of the defendant.

In *Wolfe v. Continental Casualty Company*, 647 F.2d 705 (6th Cir.1981), the Court of Appeals for the Sixth Circuit concluded that Ohio law does not permit a negligence claim which in essence arises out of a contractual relationship between the parties. The Court held "a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Id.* at 710. In this case, the relationship between the parties is permeated by the contract originally entered into by Rex Braden with Honeywell. Any claims which the Bradens have must arise under the contract. Any subrogated claim held by Grange is also based upon the same contract.

It is also apparent from the face of the Complaint that the plaintiffs are alleging that the smoke detector system was improperly installed. While such claim does not state a cause of action for negligence against the

---

1. In light of the Court's ruling with respect to the merits of defendant's arguments, it is unnecessary to consider the issue raised by plaintiff Marilyn Braden that she is not bound by the contractual clauses in question.

defendant, such claim arguably states a claim that the work performed by Honeywell pursuant to its contract was not of a workmanlike manner. While the contract entered into by the parties states that the transaction is not subject to the Uniform Commercial Code, in non-U.C.C. based contracts, Ohio law requires a party to perform its contractual obligations in a workmanlike manner and of a reasonable quality of service. See generally 18 O. Jur. 3rd CONTRACTS, Section 171; *Cordle v. Sheaf*, 104 N.E.2d 455 (Court of Appeals, Franklin County 1950).

At this juncture, no discovery has been undertaken in this case. In light of the stage of this case and in the interest of fairness, the plaintiffs shall be given a fourteen (14) day period in which to amend their Complaint consistent with this Opinion. Failure to amend will result in a dismissal of the case for failure to state a claim under Ohio law.

### V.

Based upon the foregoing, the defendant's Motion for Summary Judgment (Doc. 9) is **DENIED.** The plaintiffs shall amend their Complaint within fourteen (14) days from the date of this Order consistent with this Opinion.

**IT IS SO ORDERED.**