OPINION
Defendant-appellant, Curtis McIntosh, appeals the decision of the Butler County Common Pleas Court finding that he was liable to plaintiff-appellee, Economy Linen and Towel Service, Inc. ("Economy"), on a contract for the rental of restaurant linens. We affirm the decision of the trial court.
Appellant entered into a contract with appellee in December 1996 to provide linens for a restaurant he was opening. Linens were delivered on a weekly basis, commencing in the middle of December 1996, until February 1997. Appellant notified the Economy driver delivering the linens on February 10, 1997 that he was terminating his contract with Economy. Appellant's business permanently closed in May 1997.
Economy filed an action against appellant to recover $6,441.22, which apparently constituted liquidated damages, merchandise loss charges, and unpaid accounts receivable. Appellant filed a counterclaim against Economy and one of its employees, Douglas Oen. Appellant filed a motion for summary judgment, which was denied by the trial court.[1] The matter was tried to a jury, which awarded Economy $6,441.22 in damages. Appellant appeals the decision and raises four assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN DENYING HIS MOTION FOR SUMMARY JUDGMENT.
 Appellant presents several sub-issues under the first assignment of error. Appellant argues that summary judgment should have been granted because Economy failed to show the existence of a contract, to demonstrate its own performance or show a breach by appellant, and damages.
A movant may appeal the denial of a motion for summary judgment after a subsequent adverse final judgment. Balson v. Dodds (1980),62 Ohio St.2d 287, 289. When reviewing a trial court's ruling on summary judgment on appeal, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. Jones v.Shelley Co. (1995), 106 Ohio App.3d 440 . However, the Ohio Supreme Court has limited the scope of review by holding that a trial court commits harmless error in denying a motion for summary judgment if a subsequent trial on the same issues demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made. Continental Ins. Co. v. Whittington
(1994), 71 Ohio St.3d 150,156.
Summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewing that evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Civ.R. 56(C). State ex rel. Morley v. Lordi (1995),72 Ohio St.3d 510, 512.
The controversy between the parties involves a document that purports to be a contract for the rental of linens by Economy to appellant. The purported contract, which is signed by both parties, is a preprinted form. This form identifies the parties to the contract and in the second paragraph outlines the duration of the contract. The preprinted portion lists sixty months as the contract duration. The numeral "60" has been crossed through and the numeral "36" is handwritten above it. To the right of the numeral "36" are the handwritten letters, "DO" and "CM." The parties do not dispute that these letters are the initials of the Economy salesperson, Douglas Oen, and of appellant.
Appellant asserts that the handwritten change for the duration of the contract from sixty months to thirty-six months was not approved by him, and was, in fact, fraudulently altered by Oen or Economy after appellant signed the contract. Appellant contends that he originally altered the contract duration term to reflect the term of zero months, but that the zero was changed to a "36."
Appellant further asserts that Economy did not fulfill its promises under the contract because Economy was using a billing method to which appellant alleges he did not agree. Economy was charging appellant for the agreed-upon unit price for linens used by the restaurant and a percentage of that cost for linens supplied but not used.
Appellant argued in his motion for summary judgment that no contract existed because no meeting of the minds occurred and the contract was not definite and certain. A contract is promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. Episcopal Retirement Homes, Inc.v. Ohio Dept. of Indus. Relations (1991), 61 Ohio St.3d 366, 369. In order to declare the existence of a contract, both parties to the contract must consent to its terms. Id. There must be a meeting of the minds of both parties and the contract must be definite and certain.Id. To constitute a valid contract, there must be a meeting of the minds of both parties, and there must be an offer on the one side and an acceptance on the other. Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. Whether a meeting of the minds occurred is a question of fact. Dowd v.Barrett (Feb. 2, 1998), Warren App. No. CA97-08-084, unreported, following Garrison v. Daytonian Hotel (1995), 105 Ohio App.3d 322, 325. Construing the evidence most favorably for the nonmoving party on appellant's summary judgment motion, reasonable minds could find that the parties had a meeting of the minds sufficient for the initial formation of the contract. The contract on its face was definite and certain as to its terms. Appellant's argument is simply that the agreement is based, in part, upon a misrepresentation by Oen or Economy. This was properly an issue for the trier of fact.
Appellant also argues that Economy failed to show its performance on the contract. For purposes of the summary judgment motion, Economy's delivery of new linen to appellant's restaurant and retrieval of used linen on a weekly basis for two months is evidence of performance. Economy submitted invoices weekly at delivery, which were addressed to appellant and signed as received by him.
Appellant further argues that he was entitled to summary judgment because he alleges that Economy failed to show a breach of contract by appellant. A breach of contract is a failure without legal excuse to perform any promise that forms a whole or part of a contract, including the refusal of a party to recognize the existence of the contract or the doing of something inconsistent with its existence. National City Bk. OfCleveland v. Erskine Sons (1953), 158 Ohio St. 450, paragraph one of syllabus. Whether a material breach has occurred is a question of fact.Bradley v. Pentajay Homes (July 3, 1991), Athens App. No. CA1458, unreported. In this case, both parties are alleging breach of the contract by the other. Appellant alleges that Economy failed to keep its promises, which amounts to an allegation of breach of contract. Factual issues existed concerning which party breached the contract and whether it was a material breach.
Appellant next asserted that Economy failed to show that it was entitled to damages. The amount of damages due on a breach of contract is a question of fact for the trier of fact. Quillen v. Bates (Dec. 3, 1992), Miami App. No. 91-CA-39, unreported. Construing the evidence most favorably for the nonmoving party, Economy entered into an agreement for thirty-six months to provide a linen service for remuneration, and the parties did not mutually agree to the termination of the agreement after two months. Factual issues remained regarding the damages issue. Given the factual issues raised concerning breach of contract, damages and the allegations of fraud, the trial court correctly concluded that summary judgment was not appropriate.
Appellant further argues that summary judgment was required because the liquidated damages clause in the contract was unenforceable. The liquidated damages clause in paragraph twenty of the contract provides as follows:
 The parties agree that in the event of a breach of this Contract by the customer, the company shall be entitled to agreed, liquidated damages in an amount of forty (40) percent of the gross anticipated receipts hereunder for the unexpired term of the Contract. The parties agree that this 40% is equivalent to gross profit, and consists of approximately 30% fixed cost and 10% net profit. Gross anticipated receipts shall be calculated as the product of the number of weeks remaining under the Contract from the date of breach to the expiration date times the greater of (a) the actual weekly billing amount at the time of termination of service or (b) the minimum delivery charge agreed to under the Contract.
 The Ohio Supreme Court has set forth the test for determining whether a liquidated damages clause is enforceable as follows:
 Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
Samson Sales, Inc. v. Honeywell, Inc. (1984), 12 Ohio St.3d 27, syllabus.
Upon a review of the contract's language and applying the Samson test, we find that the liquidated damages clause on its face was not a penalty. Economy's damages would be uncertain because appellant's usage and needs could, and probably would, change over the course of thirty-six months and would alter Economy's profits. Further, the amount of liquidated damages is not manifestly unreasonable or disproportionate to actual damages. Since otherwise unrecovered fixed expenses and profit constitute at least part of that which would be recovered if damages were actually proved, the basis for the liquidated damages appears to be neither unreasonable nor disproportionate to actual damages. See DomesticLinen Supply Laundry Co. v. Caplin (Oct. 16, 1979), Franklin App. No. 79AP-242, unreported.
Finally, the record is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow a breach of contract. This agreement involved business people who freely entered into the contract for linen service. Despite appellant's protests that the liquidated damages clause was hidden on the back of the contract, section five (5) on the front of the contract refers the parties to the terms on the reverse side of the contract.
For purposes of summary judgment, the liquidated damages clause is not a penalty. We acknowledge that there may be instances where an otherwise facially valid liquidated damages clause may be shown to operate as a penalty under the circumstances involved. See id. It is for that reason that summary judgment on the issue of the liquidated damages clause was also not appropriate. The trial court did not err by refusing to grant summary judgment on that issue.
Finally, appellant argues that summary judgment was appropriate because Economy was unable to prove a breach of contract in an action on account. Appellant asserts that Economy's action on account should fail because Economy failed to show the existence of a contract, performance, breach, and damages. Based upon our findings outlined above on the issues of the contract, performance, breach, and damages, summary judgment on this issue was not appropriate. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY EXCLUDING CROSS-EXAMINATION OF HAROLD F. RODIN PERTAINING TO QUALIFICATIONS AND CREDIBILITY.
 In his second assignment of error, appellant argues that he was not permitted by the trial court to effectively challenge the qualifications of Economy's expert witness, Harold F. Rodin. Rodin provided an opinion about whether the numeral representing the duration of the contract was altered from zero to thirty-six, as appellant claimed. Appellant filed a motion in limine to inform the trial court about the extensive graphoanalysis or graphology background of Economy's expert witness, Harold F. Rodin. Appellant requested permission to cross-examine the witness on his qualifications before the witness gave any opinion. In his appellate brief, appellant compares graphology to tea-leaf reading or fortune telling. The trial court granted appellant's motion and permitted cross-examination before any opinion was given. After receiving assurances from Economy that Rodin would not give opinions based upon graphology, the trial court did not permit appellant to ask Rodin to define graphology.
Questions regarding the qualification of an individual as an expert witness are to be determined by the trial court on the facts, and rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the trial court abused its discretion. SeeState. v. Tomlin (1992), 63 Ohio St.3d 724, 728. It must be determined whether the trial court's exclusion of the questioning was so unreasonable, arbitrary, or unconscionable as to amount to an abuse of discretion. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Reviewing the partial record provided to this court on appeal, we find that appellant's assignment of error must fail. Contrary to the arguments of appellant, the trial court did not prohibit appellant from engaging in a thorough cross-examination of Rodin's qualifications. Appellant posed numerous questions to Rodin concerning his qualifications and had ample opportunity to emphasize his perceived professional shortcomings. The trial court merely sustained an objection to the general question to describe graphology, after the trial court determined that graphology would not be the basis of the expert testimony. The trial court was within its discretion to determine that it would not permit a detailed explanation of graphology because Rodin would not be permitted to testify concerning graphology or to base his opinions on graphology.
Further, the trial court did not abuse its discretion in determining the relevance of such questioning and in avoiding potential confusion for the jury, which was present during voir dire of the witness. We also note that appellant did not ask the trial court for clarification about the parameters of his cross-examination after the trial court asked him to "move on," did not object to the trial court's decision to permit Rodin to testify as an expert witness after voir dire and, according to the record provided, did not move to strike Rodin's testimony.
Appellant also argues that it was error to allow Rodin's testimony as a forensic document examiner when his training was graphoanalysis. As we have previously discussed, the question regarding the qualifications of an expert witness is within the sound discretion of the trial court. The trial court heard both the direct examination and cross-examination on Rodin's qualifications. The question before this court is not whether the trial court ruled as we would have ruled if confronted with these questions, but whether the trial court abused its discretion. Calderonv. Sharkey (1982), 70 Ohio St.2d 218, 222. The trial court's decision to permit Rodin to testify was not unreasonable, arbitrary or unconscionable. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN PRECLUDING REBUTTAL BY PROFESSOR OF LAW [sic] ANDRE A. MOENSSENS.
 In his third assignment of error, appellant asserts that the trial court abused its discretion and violated his due process rights when it did not permit appellant to present the testimony of a rebuttal witness, Andre A. Moenssens, who had been disclosed to Economy two weeks before trial. Appellant argues that Moenssens' testimony would have impeached the credentials of Rodin in reference to Rodin's graphology training. Appellant asserts that Rodin also would have been impeached when Moenssens testified that, contrary to the claims on Rodin's curriculum vitae, Rodin never studied with or under Moenssens. Economy filed a motion in limine to prohibit appellant from calling Moenssens as a witness, claiming prejudice due to the late disclosure. Apparently, a hearing was held on the motion, but the court entry does not explain the trial court's reasons for prohibiting Moenssens' testimony, and a transcript of the hearing was not provided to this court.[2]
The decision to admit or exclude evidence is a matter that rests within the discretion of the trial court; an appellate court will not disturb the trial court's decision absent a showing the trial court abused its discretion and, further, that the defendant suffered material prejudice. See State v. Martin (1985), 19 Ohio St.3d 122, 129.
A review of the docket record shows that the discovery cut-off date in this case was extended by the trial court from September 30, 1999 to December 30, 1999 so that appellant could complete his discovery with respect to the plaintiff's [Economy's] expert witess. Economy's expert witness, Rodin, was disclosed to appellant on September 24, 1999. Appellant disclosed Moenssens' name two weeks before the August 10, 2000, trial date.
A review of the record provided to this court does not disclose whether appellant objected to the trial court's decision to bar Moenssens' testimony, or proffered Moenssens' testimony to the trial court on the record at trial.[3] Nonetheless, we are unable to find that appellant was harmed by the exclusion of Moenssens' testimony. As we have previously stated, the trial court did not abuse its discretion when it prohibited Rodin from basing his opinions on graphology. Therefore, Moenssens' anticipated attack on graphology was not relevant and the exclusion of that testimony was not prejudicial to appellant. Appellant was attempting to rebut evidence that was not part of Economy's case-in-chief. In addition, appellant himself successfully blocked the admission of Rodin's curriculum vitae into evidence. Moenssens' proposed testimony exposing the alleged false claim in the curriculum vitae about Rodin's study with Moenssens was equally irrelevant when such evidence had never been admitted.
Appellant was not materially prejudiced by the trial court's exclusion of Moenssens as a rebuttal witness. The trial court's exclusion of the witness was not unreasonable, arbitrary, or unconscionable. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN GRANTING APPELLEE'S MOTION FOR A DIRECTED VERDICT ON THE DEFENDANT-APPELLANT'S INVASION OF PRIVACY CLAIM.
 In his fourth assignment of error, appellant argues that his invasion of privacy counterclaim should not have been dismissed, alleging that a material alteration of a document after it has been signed, without the knowledge or consent of the person signing, is a forgery and constitutes a misappropriation of name and is an invasion of privacy.
When considering a motion for a directed verdict, the evidence is construed most strongly in favor of appellant, the party against whom the motion is directed, and the motion must be overruled unless, after construing the evidence, reasonable minds could reach no other conclusion but that the movant is entitled to a judgment in his favor. UniversalWindows Doors, Inc. v. Eagle Window Door (1996), 116 Ohio App.3d 692,699.
An actionable invasion of a right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. Housh v. Peth (1956), 165 Ohio St. 35, paragraph two of syllabus. The forgery of a signature of another is a recognized variant of the tort known generally as invasion of privacy.Thomas v. Mitchell (Dec. 17, 1993), Huron App. No. H-93-17, unreported, citing an illustration in the Restatement of Law 2d, Torts (1965), Section 652C. It is the use of the person's name as a symbol of his identity that gives rise to an action based on the right of privacy.Schlessman v. Schlessman (1975), 50 Ohio App.2d 179, 180-181.
Appellant has never alleged that Economy or Oen forged his signature, as was the case in the above-cited cases on the variant of the tort of invasion of privacy. The name and identity of the person whose signature was forged is an integral element of the tort claim. Construing the evidence most favorably for appellant on the motion for a directed verdict, we find that reasonable minds could reach no other conclusion but that Economy and Oen are entitled to judgment as a matter of law on appellant's counterclaim for invasion of privacy. We also note that appellant's action or defense of fraud in the alleged altering of the contract was presented to the jury, which rendered a verdict for Economy. Because the fact-finder considered the facts contained in the allegation of fraud, which would constitute many of the same facts underlying the privacy claim, any alleged error by the trial court with respect to its ruling on the motion for a directed verdict was harmless error. See Wright v. University Hospital of Cleveland (1989),55 Ohio App.3d 227, 232. Appellant's fourth assignment of error is overruled.
VALEN, P.J., and KERNS, J., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] The trial court found that summary judgment was not appropriate because it found that factual disputes existed, but issued such decision without discussion or analysis.
[2] Duty to provide transcript for appellate review falls upon appellant. See App.R. 9.
[3] Generally, Evid.R. 103 states that an error may not be predicated upon a decision to exclude evidence unless a substantial right of a party is affected and an objection to the exclusion or proffer is made at trial. State v. White (1982), 6 Ohio App.3d 1, 3-4. However, we are aware that the Ohio Supreme Court in footnote 5 in Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 86, stated that in certain cases involving a motion in limine, the appellant's failure to object does not constitute a waiver and the matter is proper for appellate review. While we cannot discern from the record whether the trial court made its ruling on the motion in limine as a final order, we will review the decision to exclude the witness.