Defendant-appellant, Duane Rossing, appeals the decision of the Middletown Municipal Court awarding $480 plus interest and costs to plaintiff-appellee, Bryan Robertson, resulting from appellee's attempt to rent an apartment from appellant. On February 1, 1997, appellee and Diane Harrison, his girlfriend who was also a prospective tenant, came to appellant's rental office and filled out an application to rent an apartment. Along with the application, appellee paid a required $480 performance deposit.
In the first section of the application, appellee and Harrison were required to provide background information. One question asked, "Have you ever been served an eviction notice, been asked to move, or been evicted?" Harrison responded "yes," and appellee responded "no" to this question. Appellant testified that he asked Harrison several questions regarding her past evictions and that she admitted that she had been evicted from an apartment on Sora Lane. Appellant then testified that during his background search, he discovered that Harrison had also been evicted from 1935 Brentwood, an apartment owned by Art Frasik, and that this second eviction had not been disclosed by Harrison.
The next section of the application contained several basic contractual obligations. One clause stated, "I/we understand that the performance monies I/we have submitted will be returned should this contract be declined by landlord, except for a $50 per person application fee, IF ANY questions are not answered honestly." At the end of the application were signature lines for all parties. Both appellee and Harrison signed the application on February 1, 1997. Appellant never signed the form.
Several days later, appellant notified appellee that his application had been declined, however, appellant retained the entire $480. Appellant told appellee that $200 was owed because Harrison had provided false information on the application regarding her rental history.[1] Appellant then told appellee that he was keeping the remaining $280 to satisfy a prior debt that Harrison owed to Frasik due to her eviction from the Brentwood apartment. Appellee sued to recover the deposit, and appellant filed a counter claim. On August 19, 1997, the case was heard before a magistrate who found that appellee was entitled to a full refund plus interest and costs. The magistrate's decision was then adopted by the court, and appellant appealed, raising two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT'S/ APPELLANT'S [sic] CLAIMS UNDER THE PERFORMANCE DEPOSIT.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT'S/APPELLANT'S [sic] THE OPPORTUNITY TO PRESENT TESTIMONY ON PAST DEBTS AND AGENCY RELATIONSHIP.
Under his first assignment of error, appellant argues that the trial court improperly construed the contract between the parties since the contract clearly provided for a charge of $50 per person if any background information proved to be inaccurate. We note that the instrument at issue does not contain all the formal requirements of R.C. 5321.18 to constitute a "residential rental agreement." Rather, we find that this instrument is more appropriately construed as a contract to make a lease, and we note that "[t]he rules governing the construction and effect of contracts generally apply to contracts to make a lease." 65 Ohio Jurisprudence 3d (1996) 44, Landlord and Tenant, Section 19.
Under general contract law, "it is well-established that courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both."Richard A. Berjian, D.O., Inc. v. Ohio Bell Telephone Co.
(1978), 54 Ohio St.2d 147, 151. In Berjian, the form contract was provided and signed by Ohio Bell, the offeror, but was never signed by Berjian, the offeree. Despite the lack the offeree's signature, the court found that the contract was enforceable. The court stated that "[s]ignature spaces in the form contract do not in and of themselves require that the signatures of the parties are a condition precedent to the agreement's enforceability." Id. at 152. Further, the court found no evidence of any intent by the parties that the contract should be binding only after it was signed. Id. at 151.
Thus, the issue for this court to determine is whether the parties manifested intent to be bound only after the instrument was signed. A comparison of the facts in this case with those of Berjian leads us to conclude that in this case there was evidence of such intent. In both Berjian and the present case the offeror provided a written form contract. However, aside from this similarity, the facts of Berjian differ from the case at bar. First, in Berjian, it was the offeree, not the offeror, who failed to sign the contract. Second, the parties inBerjian had a history of prior dealings, and thus, the court concluded that Ohio Bell was justified in believing that Berjian had accepted the terms of this agreement where the terms were similar to those in the parties' prior dealings. Further, Berjian had partly performed, even though he never signed the contract. Id. at 153.
In this case, however, the offeror drafted the instrument to specifically include signature lines for all parties, the offeree had no bargaining power to change the terms of the contract, the offeror failed to sign the instrument, and the parties had no history of prior dealings. We find that in this case, unlike Berjian, signatures of all parties were necessary to create a binding contract. Thus, for want of appellant's signature, no enforceable contract existed. See McIntosh v.Micheli Restaurant, Inc. (M. C. 1984), 22 Ohio Misc.2d 5.
However, even if this had been an enforceable contract, the clause in issue would not have been enforceable because it is not a legitimate liquidated damages clause. Generally, contract clauses providing for reasonable liquidated damages are valid and enforceable. Samson Sales, Inc. v. Honeywell, Inc. (1984),12 Ohio St.3d 27, 28. However, reasonable compensation for actual damages is the legitimate objective of such a provision, and where the amount is manifestly inequitable and unrealistic, courts will ordinarily regard it as penalty and such a provision will not be enforced. Id. See, also, In re GrahamSquare, Inc. (C.A.6, 1997), 126 F.3d 823, 828.
In this case, the face of the instrument bears no evidence that the stipulated amount constitutes reasonable compensation for actual, foreseeable damages. Generally, an instrument is to be strictly construed against the person who prepared it, and favorably to the person who had no voice in the selection of the language. See Davidson v. Bucklew, (1992) 90 Ohio App.3d 328,331. Thus, construing this clause strictly against appellant, we must conclude that the $200 amount bears no reasonable relation to actual damage suffered by appellant as a result of Harrison's failure to fully disclose all of her prior evictions. Accordingly, even if the parties had formed a binding contract, we find that the clause at issue would not be enforced because it constitutes a penalty. Appellant's first assignment of error is overruled.
Under his second assignment of error, appellant argues that the trial court erred by excluding testimony regarding Harrison's past debt to Frasik. The court excluded this evidence because it was irrelevant to the dispute at hand. Appellant attempted to introduce this testimony to "establish that there was a debt due Frasik by Harrison and [appellant] was to retain part of the deposit to apply to this indebtedness." Appellant further argued that "as an agent of Frasik" he had the right "to retain monies justly due him." Appellant has failed to cite any authority supporting this proposition. Appellant's arguments have no basis in law.
The following dialogue between the trial judge and appellant's counsel reveals that the trial court correctly ruled on this matter:
 COURT: How, how is this relevant to this case, Mr. Matejkovic?
 MR. MATEJKOVIC: Well, Your Honor, part of Mr. Rossing's counterclaim is that monies, monies that he withheld above and beyond what he was entitled to for damages that they caused to him by lying to him, he was holding to give to a business associate of his, Art Frasik.
 COURT: Well does Mr., does Mr. Rossing run a collection agency?
MR. MATEJKOVIC: No, you Honor.
 COURT: Does Mr. Frasik not have a remedy to enforce some judgment he may have?
MR. MATEJKOVIC: I assume that he does, Your Honor.
We find no error by the trial court in excluding evidence regarding Harrison's past debt to Frasik. Appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] Appellant argues that "$50 per person" includes appellee, Harrison, and Harrison's son, all of whom were listed on the application as occupants. In addition, appellant contends that "$50 per person" includes appellee's son because, though he was not listed on the application, appellant presumed he would be an occasional occupant.