JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant, Carrie Foliano, appeals from the trial court's order granting the motion of defendant-appellee, Dussault Moving, Inc., to stay proceedings and compel arbitration. For the reasons that follow, we reverse and remand.
 {¶ 2} On August 10, 2000, Foliano entered into a contract with Dussault whereby Dussault agreed to move Foliano's household goods to its storage facility and store them indefinitely. The contract valued Foliano's goods at $50,000 and provided that she would pay a storage fee of $38.00 per pallet of goods, or $152.00 per month. The contract, which was drafted by Dussault, contained boilerplate terms and conditions, including a limitation of liability clause, which provided, in pertinent part:
 {¶ 3} "(e) Unless a greater valuation is stated herein, the depositor or owner declares that the value in case of loss or damage arising out of storage, transportation, packing, unpacking, fumigation, cleaning or handling of the goods and the liability of the company for any claim for which it may be liable for each or any piece or package and the contents thereof does not exceed, and is limited to, that amount per lb. designated on the front of this contract, or, if no amount is designated, to 60 cents per lb. per article for the entire contents of the storage lot, upon which declared or agreed value the rates are based, the depositor or owner having been given the opportunity to declare a higher valuation without limitation in case of loss or damage from any clause which would make the company liable and to pay the higher rate based thereon, and in no event shall the company be liable except for its own negligence."
 {¶ 4} The contract also contained an arbitration clause, which provided:
 {¶ 5} "Any controversy or claim arising out of or relating to this contract, the breach thereof, or the goods affected thereby, whether such claims be found in tort or contract shall be settled by arbitration law of the State of the principal place of business of the company and under the rules of the American Arbitration Association, provided, however, that upon any such arbitration the arbitrator or arbitrators may not vary or modify any of the foregoing provisions."
 {¶ 6} From August 2000 to January 2002, Foliano paid Dussault the monthly storage fee. In January of 2002, Foliano contacted Dussault and requested that it deliver her household goods to her new home. Dussault advised Foliano, however, that some of the goods it had been storing for her were not available and, in fact, had been either lost, stolen or sold at public auction. Dussault also advised Foliano that although she had been charged and had paid storage fees for 18 months for four pallets of goods, there had actually only been three pallets of goods. Dussault informed Foliano that its liability for her missing property and any overpayment was limited pursuant to the contract to $1,233 (2055 lbs. @ $.60/lb.).
 {¶ 7} In July 2002, Foliano filed suit, claiming breach of contract, conversion, violation of the Ohio Consumer Sales Practices Act and fraud. Foliano also sought a declaratory judgment that the contract was unenforceable because it limited Dussault's liability to less than the reasonable value of the missing property, required any suit to be submitted to arbitration and limited the time for bringing a claim to a term less than the applicable statute of limitations.
 {¶ 8} Dussault answered Foliano's complaint, asserting several affirmative defenses, including that Foliano's complaint was barred by application of the arbitration agreement. Dussault subsequently filed a motion to stay proceedings and compel arbitration. Foliano filed a brief in opposition and a motion for partial summary judgment. In her motion for summary judgment, Foliano argued that the limitation of liability clause was unenforceable.
 {¶ 9} The trial court subsequently issued an order granting Dussault's motion to stay proceedings and compel binding arbitration "pursuant to the binding arbitration agreement executed between the parties." The order made no mention of Foliano's motion for summary judgment.
 {¶ 10} Foliano timely appealed and has raised two assignments of error for our review.
 {¶ 11} In her second assignment of error, Foliano contends that the trial court erred in not ruling on her motion for summary judgment regarding the limitation of liability clause. Foliano contends that we should remand the case to the trial court for a ruling regarding the limitation of liability clause because, even if the arbitration clause in the contract is enforceable, the arbitrators, by the terms of the contract, do not have any authority to vary the terms of the contract and, therefore, could not find the limitation of liability clause unenforceable.
 {¶ 12} There is no need, however, to remand the matter for a ruling by the trial court on this issue. By referring the case to arbitration without expressly ruling on Foliano's motion for summary judgment, the trial court implicitly denied the motion. See State exrel. The V Companies v. Marshall (1998), 81 Ohio St.3d 4678, 469. Accordingly, the issue on appeal is whether the trial court erred in denying the motion.[1]
 {¶ 13} Civ.R. 56(C) provides that summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C).Grafton v. Ohio Edison Co. (1996), 77 Ohio St.2d 102, 105.
 {¶ 14} As a general rule, parties are free to enter into contracts that contain provisions that apportion damages in the event of default.Lake Ridge Academy v. Carney (1993), 66 Ohio St.3d 376, 381. In certain circumstances, however, complete freedom of contract is not permitted for public policy reasons. Id. One such circumstance is when stipulated damages constitute a penalty. Id.
 {¶ 15} Whether a stipulated amount in a damages clause constitutes liquidated damages or should be considered as a penalty is a question of law for the court to decide. Id. at 380.
 {¶ 16} In paragraph two of its syllabus in Jones v. Stevens
(1925), 112 Ohio St. 43, the Supreme Court of Ohio set forth the test for determining whether a limitation of liability clause should be upheld:
 {¶ 17} "Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be 1) uncertain as to amount and difficult of proof, and if 2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if 3) the contract is consistent with the conclusion that it was the intention of the parties that the damages in the amount stated should follow the breach thereof."
 {¶ 18} More recently, in Samson Sales, Inc. v. Honeywell, Inc.
(1984), 12 Ohio St.3d 27, the Ohio Supreme Court refused to enforce a limitation of damages clause that purported to limit Honeywell's liability to $50 where Samson had paid Honeywell $1,500 for installation of a security system and a $150 monthly fee and then suffered more than $60,000 in property loss. Applying the Jones test, the court stated:
 {¶ 19} "With reference to the initial test suggested in Jones, the court of appeals expressly noted that `the damages here are patently estimable,' and this finding is attuned to the indisputable fact that the damages in this case would be as readily ascertainable as the damages in a multitude of other conceivable situations involving negligence and/or breach of contract. As to the second guideline recommended by this court, the stated sum of $50 in the contract involved in this case is manifestly disproportionate to either the consideration paid by Samson or the possible damage that reasonably could be foreseen from the failure of Honeywell to notify the police of the burglary. And with particular emphasis upon the third condition proposed in Jones v. Stevens, supra, it is beyond comprehension that the parties intended that damages in the amount of $50 should follow the negligent breach of the contract. In other words, an examination of the minute type used in the standard contract issued by Morse, as well as a fair construction of the contract provision as a whole, fails to evince a conscious intention of the parties to consider, estimate, or adjust the damages that might reasonably flow from the negligent breach of the agreement." Samson Sales,12 Ohio St.3d at 29.
 {¶ 20} Applying the first prong of the Jones test to this case, we note that the damages here are neither uncertain as to amount nor difficult to prove: the damages are ascertainable by evidence such as estimated or actual replacement cost of the missing items and calculation of Foliano's overpayment.
 {¶ 21} Regarding the second prong, Foliano paid Dussault $3,295 to move her property to storage and store it for 18 months. This amount, coupled with the $50,000 declared value of Foliano's property, unequivocally indicates that the stipulated recovery amount of $1,233 is manifestly disproportionate to the amount of consideration paid by Foliano to Dussault for its performance of the contract and to the damages allegedly sustained or reasonably foreseeable from potential negligent conduct by Dussault.
 {¶ 22} Finally, the standard form contract utilized by Dussault in this case and a fair construction of the contract provision at issue "fail to evince a conscious intention of the parties to consider, estimate, or adjust the damages that might reasonably flow from the negligent breach of the agreement." Id. This is especially true in light of Dussault's admission that it may have sold Foliano's property at public auction. To allow the limitation of liability clause to stand in such a case would create a disincentive for a storage company to act properly in storing its customers' goods. If enforced, the limitation of liability clause could conceivably allow the storage company to sell the goods at public auction for more than $.60/lb, while limiting its customer's recovery pursuant to the contract to only $.60/lb., thereby creating an instant windfall for the company.
 {¶ 23} Dussault contends that the limitation of liability provision in its contract with Foliano comports with the statutory requirements of R.C. 1307.09(B), however, and therefore should be found enforceable. R.C. 1307.09(B), regarding the contractual limitation of a warehouseman's liability, provides, in pertinent part:
 {¶ 24} "Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; provided, that such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder * * *. No such limitation is effective with respect to the warehouseman's liability for conversion to his own use."
 {¶ 25} Dussault first contends that, pursuant to R.C. 1307.09(B), Foliano was offered an opportunity to purchase additional coverage for her stored items, but rejected the coverage. We do not find this fact dispositive. In State Automobile Ins. Co. v. Sonitrol (Dec. 3, 1987), Cuyahoga App. No. 54186, this court held that a limitation of liability clause that limited the defendant's liability to $250 was unconscionable, and therefore unenforceable, where the plaintiff's loss was $7,500, despite the fact that the plaintiff had been offered the opportunity to purchase additional liability coverage.
 {¶ 26} Dussault also contends that there is no allegation in the complaint that it converted any of Foliano's items to its own use, a claim which, if proven, would render the limitation of liability clause ineffective. This argument is also without merit.
 {¶ 27} Conversion is generally defined as any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights, whether it is done purposefully or not. See Horey v. Martin (July 2, 1998), Cuyahoga App. No. 72802; Fulks v. Fulks (1953), 95 Ohio App. 515; Aetna Casualty Surety Co. v. Higbee Co. (1947), 80 Ohio App. 437, 445. The measure of damages in an action for conversion is the value of the property at the time and place of the taking or conversion by the wrongdoer.Schoenberger v. Davis (June 23, 1983), Cuyahoga App. No. 45611.
 {¶ 28} In Aetna Casualty Surety Co., supra, this court considered whether a limitation of liability clause applied where a woman delivered her fur coat to The Higbee Company for storage and repair and then, without the woman's consent, The Higbee Company sent the coat to another company for cleaning, where it was stolen. The court found that the limitation of liability clause contained in the bailment contract between the woman and The Higbee Company "was only for damages that might be sustained in carrying out the terms of the contract and not where the damage claimed is for the value of the property in an action for conversion." Id. at 443. The court noted:
 {¶ 29} "In the case of Gulbrandsen, Admr., v. Chaseburg StateBank (1941), 236 Wis. 391, it was held that if a person entrusts another with goods for the accomplishment of a particular purpose and such bailee puts them into the hands of a third person contrary to orders, it is conversion and wrongful intent is not essential, it being sufficient if the owner has been deprived of his property by the act of another assuming an unauthorized control over it. If a wrongful act is intentionally done by a bailee with regard to the subject of the bailment it matters not that it was done with a mistaken notion of the bailee that he was acting within his legal right.
 {¶ 30} "If, therefore, the plaintiff is able to establish by the proper degree of proof that the defendant was guilty of conversion in sending the coat to an outside cleaner where it was lost, the $100 limitation of liability would not apply." Id. at 445.
 {¶ 31} Here, Foliano has alleged, among other things, that Dussault sold her property at public auction. This allegation is sufficient to state a claim for conversion.[2] Thus, even if we had not found the limitation of liability clause unenforceable as a penalty, pursuant to R.C. 1307.09(B), Foliano's conversion claim, if proven, renders the limitation of liability clause ineffective.
 {¶ 32} Because none of the prongs of the Jones test are met in this case, the limitation of liability clause is a penalty, rather than a proper liquidated damages clause and, therefore, is unenforceable. Accordingly, the trial court erred in denying Foliano's motion for summary judgment regarding this issue.
 {¶ 33} In her first assignment of error, Foliano contends that the trial court erred in granting Dussault's motion to stay proceedings and compel arbitration. We agree.
 {¶ 34} The contract provides that the arbitrators may not vary or modify any of the terms of the contract. Thus, even though the limitation of liability clause is unenforceable, the arbitrators could not modify or vacate the clause and would be required to enforce it at arbitration. Accordingly, the arbitration clause, in conjunction with the limitation of liability provision, deprives Foliano of the proper remedy for Dussault's alleged breach of contract and tortious actions. We hold, therefore, that the arbitration clause is unenforceable as a matter of law and, accordingly, the trial court erred in staying proceedings and referring the matter to arbitration.
 {¶ 35} Foliano's assignments of error are well taken. The order staying proceedings and remanding the case to arbitration is reversed and the matter is remanded for further proceedings.
Reversed and remanded.
DIANE KARPINSKI, P.J. and SEAN C. GALLAGHER, J. concur.
[1] Foliano appealed from the trial court's order granting Dussault's motion to stay proceedings and compel binding arbitration, which is a final appealable order. R.C. 2711.02. Our consideration of the trial court's implicit denial of Foliano's motion for partial summary judgment does not imply that we consider an order denying a motion for summary judgment to be a final appealable order.
[2] Dussault attempts to distinguish Aetna Casualty Surety Co. by arguing that The Higbee Company intentionally placed the fur coat with the third party, but Dussualt did not intentionally sell Foliano's goods at public auction. We fail to see the distinction. Even assuming that Dussault did not have any "wrongful intent" in selling Foliano's goods, if it did, in fact, sell Foliano's goods at public auction, it intentionally placed them in the hands of a third party.